IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLYMPIC SPORTS DATA SERVICES, LTD., | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-117 |
| | : | |
| SANDY MASELLI, Jr., et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                         December 22, 2008

SBG Global seeks to intervene and vacate the court's judgment affirming an arbitration award in favor of Olympic Sports Data, Inc. (Document #2). The award transferred ownership of two domain names[1] to Olympic; SBG believes they have been the rightful owners since 2004. After considering the parties' memoranda, I will grant the motion to intervene and deny the motion to vacate.

**I. Background**

The domain names were initially registered on or about April 24, 1997, by Total Entertainment Canada, Ltd. and Sandy Maselli (collectively, the sellers). (Mot. to Intervene at 2.) On or about August 30, 2002, Olympic purchased the domain names.

---

[1] The domain names are <onlinesportsbook.com> and <online-sportsbook.com>. (Mot. to Intervene at 4 (Document No. 3)).

(Id.)  The Whois registration information,[2] which publicly identifies a domain name's registrant, was not updated and continued to list the sellers as the registered owners.  (Id.)

In July 2003, SBG began to lease the domain names from the sellers and created websites for them.  (Id.)  In October 2004, SBG purchased the registrations for the domain names for $75,000.00 from the sellers, and used the Internet company Escrow.com to serve as the escrow agent.  (Id. at 3.)  SBG claims the sellers never disclosed the prior sale to Olympic and that the Whois information continued to list the sellers as the registrants.  (Id. at 2–3.)  After the purchase, SBG transferred the domain names to a new registrar and updated the Whois information.  (Id. at 3.)

On July 14, 2005, Olympic filed an arbitration claim with the American Arbitration Association against the sellers to establish its ownership of the registrations of the domain names.  (Id.)  The arbitration was held pursuant to the Uniform Domain Name Dispute Resolution Policy (UDRP).  (Mot. to Vacate at 1 (Document #4).)  At least one attempt was made to serve process on SBG's owner and operator, Mr. Eduardo Agami, by ordinary mail; neither SBG nor Mr. Agami participated in the arbitration proceedings.  (See Arbitrator's Decision on Liability at 1 (Document #3 Ex. 4).)  On May 5, 2006, the

---

[2] The Internet Corporation for Assigned Names and Numbers (ICANN) explains that,
> WHOIS services provide public access to data on registered domain names, which currently includes contact information for Registered name Holders. . . . ICANN requires accredited registrars to collect and provide free public access to the name of the registered domain name and its nameservers and registrar, the date the domain was created and when its registration expires, and the contact information for the Registered Name Holder, the technical contact, and the administrative contact.

WHOIS, ICANN, http://gnso.icann.org/issues/whois (last visited Dec. 11, 2008).

arbitrator decided in favor of Olympic and directed that the registration for the domain names should be transferred to Olympic. (Id. at 2.) On February 22, 2007, the arbitrator confirmed the transfer and awarded Olympic a monetary award of $243,283.75. (Mot. to Intervene at 4.)

On July 26, 2007, Olympic filed its Petition to Affirm Arbitrator's Orders (Document #1). SBG alleges it was not included or notified of the action. I affirmed the arbitrator's award on August 15, 2007. Seven months later on March 18, 2008, SBG filed the pending Motion to Intervene and Motion to Vacate the Judgment. SBG challenges only the transfer of the domain names, not the monetary award.

## II. Legal standards

### A. Motion for intervention

Federal Rule of Civil Procedure 24 provides:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). The moving party must show that (1) its motion to intervene is timely, (2) it has an interest in the subject matter of the litigation, (3) its interest will be impaired or impeded, and (4) the existing parties do not adequately represent the movant's interest. See Kleisser v. United States Forest Serv., 157 F.3d 964, 969 (3d Cir.

1998). The burden is on the movant seeking to intervene, and failure to prove any one of the criteria is sufficient grounds to deny the motion. See 6 James W. Moore et al., Moore's Federal Practice–Civil § 24.03 (3d ed. 2008). The court is to accept the movant's motions and pleadings as true to the extent they are non-conclusory and well-pleaded. See Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 819–20 (9th Cir. 2001); Riech v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995); Foster v. Gueory, 655 F.3d 1319, 1324 (D.C. Cir. 1981). The inquiry is to be flexible and attuned to the particular circumstances of each case. See Kleisser, 157 F.3d at 972. The factors, though independent, should be considered together and not analyzed in a vaccuum. See Moore et al., supra.

**B. Motion to vacate**

Federal Rule of Civil Procedure 60 allows a party to seek relief from a final judgment in a limited set of circumstances.[3] See FED. R. CIV. P. 60(b). The rule reflects a

---

[3] The reasons for providing relief are:
    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.
FED. R. CIV. P. 60(B).

balancing of the competing interests of bringing litigation to an end and ensuring that justice be done.  See Boughner v. Sec'y of Health, Educ., & Welfare, 572 F.2d 976, 977 (3d Cir. 1978).  "Generally, a motion brought pursuant to Rule 60 is addressed to the sound discretion of the Court" and should only be granted under extraordinary circumstances.  Id.

**III. Discussion**

    **A.  SBG's motion to intervene**

        **1) Timeliness**

The first factor the court is to consider is whether the motion is timely.  The court's determination of timeliness is to be exercised in its "sound discretion" in light of all relevant circumstances.  Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, 72 F.3d 361, 369 (3d Cir. 1995) (quoting In re Fine Paper Antitrust Litigation, 695 F.2d 494, 500 (3d Cir. 1982)).  The Third Circuit has identified three factors to consider: 1) the stage of the proceeding, 2) the prejudice that delay may cause the parties, and 3) the reason for the delay.  Mountain Top, 72 F.3d at 369.

As to the first factor, the court should consider how far the case has progressed on hearings on the merits.  See id.  Trial preparation requires clients and attorneys to invest time and effort and may incur sizeable legal fees; it also requires expending judicial resources.  Because the stage of the proceedings will usually determine the extent of the

prejudice the existing parties will suffer, the court should be wary of permitting intervention as a case gets closer to going to trial.  See, e.g., Choike v. Slippery Rock Univ. of Pennsylvania, 2008 WL 4747835, at *2 (3d Cir. Oct. 30, 2008) (not published) (discussing district court's decision to deny intervention due in part to the fact that discovery had been completed and a preliminary injunction had been issued); Donovan v. United Steelworkers of America, AFL-CIO, 721 F.2d 126, 127 (3d Cir. 1983) (affirming decision to deny intervention after considering, among other things, that all pre-trial discovery had been completed and the case was scheduled for trial).  In this case, there has been no litigation at all.  Olympic merely filed a petition to affirm the arbitrator's orders.  No hearings or other filings were required.  Consequently, this matter has not proceeded to a point warranting dismissal on this ground.

    The prejudice to the current parties is minimal.  The sellers would face no prejudice because their case is over.  The prejudice to Olympic would be that its ownership of the domain names may be challenged.  (See Pl.'s Opp'n Mem. at 2 (stating that Olympic has been in control of the domain names since September of 2007).)  This, however, is exactly the same situation Olympic would have been in had SBG not moved to intervene here.  SBG almost certainly would have taken other measures—such as bringing its own suit—to challenge Olympic's control.  (See SBG's Reply at 2 ("The [Uniform Domain Name Dispute Resolution Policy] does not prevent a party from filing suit 'after' UDRP proceedings are complete." (citing Dluhos v. Strasberg, 321 F.3d 365,

371 (3d Cir. 2003))).) Because Olympic will retain control and would face no great or unexpected prejudice, this factor weighs in SBG's favor.

The delay was reasonable. SBG did not have notice of this action until September 2007 when the registration of the domain names was transferred pursuant to my order. (See Agami Reply Decl. ¶ 11 (Document #11).) SBG could not have intervened before it knew the suit existed.

Olympic questions why SBG waited until March 2008 if it had learned of this court's order in September 2007. SBG has not provided an explanation for the delay. Six months may be at or near the outer limits of excusable delay, but the analysis for timeliness is not merely limited to calculating how much time has elapsed. A primary consideration is whether the proposed intervenor's delay will prejudice the existing parties. See 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1916 (3d ed. 1998). I find that the minimal prejudice to Olympic outweighs the delay, though unexplained. Olympic will face no unexpected prejudice and will continue to retain control and use of the domain names unless I decide otherwise. Moreover, allowing SBG to intervene would help the parties to clear the confusion as to ownership.

My order affirming the award does not necessarily foreclose SBG's opportunity to intervene. While a post-judgment motion to intervene is presumptively untimely, the court may permit intervention depending on the unique circumstances of the case. See In

re Fine Paper, 695 F.2d at 500.  Here, the fact that the arbitration was held under the UDRP undermines the finality of that decision and weighs in favor of allowing the parties to proceed on the merits.  Rather than conclusively resolving the dispute, the UDRP provides "parity of appeal, affording a clear mechanism for seeking judicial review of a decision of an administrative panel canceling or transferring the domain name." Dluhos, 321 F.3d at 372 (quoting ICANN, Staff Report on Implementation Documents for the Uniform Dispute Resolution Policy (Sept. 29, 1999)) (internal quotation marks omitted).

     I find that the unique circumstances here allow for SBG to intervene.  The reasoning in United States v. Alcan Aluminum, 25 F.3d 1174 (3d Cir. 1994), is instructive.  When "an existing party induces the [potential intervenor] to refrain from intervening," the application for intervention should not fail solely on the grounds of timeliness.  Id. at 1182.  The UDRP "obviously contemplates the possibility of judicial intervention . . . before, after or during the administrative proceedings." Dluhos, 321 F.3d at 371.  Olympic does not contest this fact.  SBG had no notice of this suit though until *after* the judgment was entered because it was not joined as a party.  Although there is no indication Olympic purposely interfered with SBG's exercise of its legal rights, the failure to join or notify had the arguable effect of preventing SBG from intervening in a timely fashion.  Consequently, my order is not a definitive bar to intervention as SBG did not know it should attempt to intervene until after the fact.

**2) Interest in the subject matter**

The second factor the court is to consider is whether the proposed intervenor has an interest in the subject matter of the action. The precise type of interest needed to intervene has not been authoritatively defined, but general guidelines exist. It should be an interest that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971). It should be a legal interest, not general and indefinite. Harris v. Pernsley, 820 F.2d 592, 601 (3d Cir. 1987). There must be "a tangible threat" to the interest. Id.

Here, SBG's interest is its alleged ownership of the domain names. This interest is not merely speculative: e-mails between SBG and other parties support the existence of an oral lease, (See SBG's Reply at 16–17 (providing a series of e-mails sent on July 7, 2003, between SBG and Comcast showing that Comcast would host the sites for SBG and that the Domain Name System information for the domain names would begin resolving to SBG's name servers)), and appear to confirm SBG's formal acquisition of the domain names. (See id. at 13–14, 18–20 (providing a series of e-mails showing that Comcast requested updated registration information prior to the transfer, and an e-mail from the escrow agent showing that "[t]he seller [had] submitted the transfer for the [domain names] . . . .")). Based on these documents, SBG can demonstrate that it has a valid ownership claim.

Olympic's argument that SBG is not the real party in interest in this action is unavailing. (Pl.'s Reply at 9–11.) SBG has provided a declaration signed by Mr. Agami.

Mr. Agami avers that SBG is a sole proprietorship and that he is the owner. (Agami Reply Decl. ¶ 1 (Document #11)). SBG had been leasing the domain names around the time the company paid for them. (Id. ¶ 2.) During the lease, the domain names prominently featured the trade phrase, "Driven by SBG Global." (Id. ¶ 6.) When the domain names were purchased, it was SBG personnel who communicated with Comcast representatives for the sale and transfer. (Id. ¶ 7.) Mr. Agami was listed as the registrant, and SBG was used for the administrative and technical contact information. (Id. ¶ 3.) Based on these statements, SBG is the real party in interest in this action.

### 3) Remaining factors

The third factor the court is to consider is whether the proposed intervenor's interests will be impaired or impeded. SBG's interests will certainly be impaired if control of the registrations of the domain names is transferred to and remains with Olympic.

The fourth factor the court is to consider is whether proposed intervenor's interests are adequately represented. The court should compare the proposed intervenor's interests against the existing parties'. Mountain Top, 72 F.3d at 368. If the intervenor's interests are not represented or if all existing parties are adverse to him, then he is not adequately represented; if the intervenor's interests are identical to those of an existing party, then the burden is on the intervenor to demonstrate that the representation would be inadequate. Id. at 368–69. The sellers would gain nothing by arguing for SBG's

ownership of the registrations. Olympic's clear interest is to argue against SBG's claims. Clearly, SBG's interests would not be adequately represented.

Because SBG's motion satisfies the requirements for intervention provided in Federal Rule of Civil Procedure 24(a), I will grant it.

**B. SBG's Motion to Vacate**

I will deny the motion to vacate. The judgment is allegedly void because SBG was "never properly served with notice of the arbitration and was wholly unaware" of the current action. (See Mot. to Vacate at 5–6.) Whether SBG was properly served at the arbitration level is functionally immaterial. As SBG has assiduously argued, its failure to intervene below does not preclude it from seeking relief here. (See SBG's Reply at 3.) Practically speaking then, it made no difference whether SBG was notified of the arbitration or not.[4] SBG did not have to participate if it chose not to, and it was at least aware that an arbitration was being held regarding the domain names.[5] As a result, the judgment should not necessarily be considered void on this ground.

It is a stretch to characterize the failure to inform the court of the limited nature of UDRP proceedings as evidence that Olympic violated its duty of candor to the court. From Olympic's point of view, the arbitration decision awarded control of the domain names to Olympic; SBG did not participate in those proceedings. Olympic may have

---

[4] The arbitrator's decision indicates that an attempt was made to serve Mr. Agami by mail.

[5] Mr. Agami's declaration states that Olympic misled him regarding the exact purpose of the proceedings. Whether this is accurate is unknown. What is known, however, is that Mr. Agami and SBG were at least aware of the arbitration's existence and that it related to the domain names to some degree.

believed it did not need to notify SBG because the arbitration decision was made without SBG's input. The arbitration decision's wording would confirm that belief.[6] Proceeding on a petition to enforce then would arguably require notifying only the party (or parties) to the underlying arbitration. Unless SBG can produce more evidence that the omission was ill-intentioned, the judgment is not necessarily void for failure to inform the court.

A thornier argument is SBG's contention that it was denied due process because it was never notified or served in this action. It certainly had an interest in the ownership of the domain name, but was never added to this suit. Allowing SBG to intervene and contest the ownership would seemingly confirm that it has the makings of a cognizable claim. This would further support SBG's argument that it should have been notified. During two telephone conferences I held on this matter though, the parties expressed no objection to proceeding while maintaining the *status quo*.

I also conclude that granting the motion would unnecessarily prejudice Olympic. Transferring control would benefit SBG at Olympic's expense. I do not think resolving this matter requires the transfer. The parties' ability to contest the proper ownership of the domain names remains unharmed. Because the underlying dispute can be resolved without re-transferring control, I will deny the motion to vacate.

---

[6] The arbitrator noted that the sellers' attempted sale to SBG was invalid because the sellers no longer had title. This suggests that no valid ownership interest passed to SBG.

**IV. Conclusion**

For the foregoing reasons, I will grant SBG's Motion to Intervene and deny SBG's Motion to Vacate. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OLYMPIC SPORTS DATA** | : | |
| **SERVICES, LTD.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-117 |
| | : | |
| **SANDY MASELLI, Jr., et al.,** | : | |
| Defendants | : | |

## O R D E R

**STENGEL, J.**

**AND NOW**, this 22d day of December, 2008, upon consideration of the Motion to Intervene (Document #3) and the Motion to Vacate (Document #4), it is hereby ORDERED that the Motion to Intervene is GRANTED, and the Motion to Vacate is DENIED.

**FURTHERMORE**, it is ORDERED that:

1)   The intervenor shall file its complaint on or before January 12, 2009;

2)   The plaintiff shall file its answer by February 2, 2009;

3)   Discovery shall be completed by April 3, 2009.


BY THE COURT:


/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.